# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☒ INFORMATION   ☐ INDICTMENT
☐ SUPERSEDING

**OFFENSE CHARGED**

COUNT ONE:
18 U.S.C. § 371 -- Conspiracy

COUNT TWO:
2 U.S.C. § 1606(b) -- Lobbying Disclosure Act

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: CT ONE: 5 yrs imprisonment, fine of $250,000, 3 yrs supervised release, $100 special assessment; CT TWO: 5 yrs imprisonment, fine of $250,000, 3 yrs supervised release, $100 special assessment

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

FILED
JUN 25 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**DEFENDANT - U.S.**
▶ JACK ABRAMOFF

DISTRICT COURT NUMBER
CR 20 0260 CRB

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
} MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form    DAVID L. ANDERSON
☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    LLOYD FARNHAM

**DEFENDANT**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction   } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution _____

Has detainer been filed?   ☐ Yes   ☐ No   } If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year _____

Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address: _____

Date/Time: _____   Before Judge: _____

Comments:

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

**FILED**
JUN 25 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

## CRIMINAL COVER SHEET

***Instructions:*** *Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

**CR 20 0260 CRB**

CASE NUMBER:

CR

| | | | |
|---|---|---|---|
| **CASE NAME:** USA v. JACK ABRAMOFF | | | |
| **Is This Case Under Seal?** | Yes | No ✔ | |
| **Total Number of Defendants:** | 1 ✔ | 2-7 | 8 or more |
| **Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326?** | Yes | No ✔ | |
| **Venue (Per Crim. L.R. 18-1):** | SF ✔ | OAK | SJ |
| **Is this a potential high-cost case?** | Yes | No ✔ | |
| **Is any defendant charged with a death-penalty-eligible crime?** | Yes | No ✔ | |
| **Is this a RICO Act gang case?** | Yes | No ✔ | |

**Assigned AUSA (Lead Attorney):** Lloyd Farnham

**Date Submitted:** 6/25/2020

**Comments:**

RESET FORM    SAVE PDF

Form CAND-CRIM-COVER (Rev. 11/16)

1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney

FILED

JUN 25 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,            ) CASE NO. CR 20 0260
                                     )
         Plaintiff,                  ) VIOLATIONS:
                                     ) 18 U.S.C. § 371 – Conspiracy;
    v.                               ) 2 U.S.C. §§ 1603(a) and 1606(b) – Lobbying
                                     ) Disclosure Act
JACK ABRAMOFF,                       )
                                     ) SAN FRANCISCO VENUE
         Defendant.                  )
                                     )
                                     )

## INFORMATION

The United States Attorney charges:

<u>Introductory Allegations</u>

At all times relevant to this Information:

1.   The allegations in this Information involve a conspiracy to commit wire fraud in connection with the sale of a purported new cryptocurrency called "AML Bitcoin" through an "initial coin offering" and otherwise. Beginning in about July 2017 and continuing through at least December 2018, the cryptocurrency AML Bitcoin was marketed and sold to prospective purchasers in the United States and elsewhere through false and misleading statements. The allegations in this Information also involve the defendant's failure to register as a federal lobbyist after being retained in June 2017 to have

INFORMATION

lobbying contacts with a member of the United States House of Representatives relating to the formulation, modification, or adoption of federal legislation, rules, or policies.

### AML Bitcoin and the NAC Foundation

2. NAC Foundation, LLC ("NAC Foundation") was a Nevada limited liability corporation formed on or about February 13, 2014 by co-conspirator Rowland Marcus Andrade, not a defendant herein. Andrade was the founder and chief executive officer of NAC Foundation, which was also referred to as the "National AtenCoin Foundation." The stated purpose of NAC Foundation was to develop and manage a new cryptocurrency called AML Bitcoin. Andrade claimed to be the creator of the cryptocurrency AML Bitcoin and the inventor of AML Bitcoin technology.

3. The AML Bitcoin "White Paper," a document dated October 4, 2017, was posted on the AML Bitcoin website by Andrade and NAC Foundation. The White Paper stated that NAC Foundation created two cryptocurrencies, AML Bitcoin and its predecessor AtenCoin. In the White Paper, NAC Foundation claimed AML Bitcoin cryptocurrency would include features that would allow the cryptocurrency to comply with anti-money laundering (also referred to as "AML") and know-your-customer ("KYC") regulations and laws by using "biometric technologies" among other methods to confirm the identities of participants in transactions using AML Bitcoin. The White Paper stated that Andrade sought to raise up to $100 million from the public sale of AML Bitcoin tokens.

4. Beginning in or about July 2017, Andrade and NAC Foundation began raising money purportedly for the development of AML Bitcoin by selling AML Bitcoin tokens. Prospective purchasers of the AML Bitcoin tokens were told that once the AML Bitcoin technology was developed and functioning the tokens would be converted to the actual AML Bitcoin cryptocurrency.

5. Defendant JACK ABRAMOFF was retained by Andrade and NAC Foundation in or about June 2017 to perform consulting and to work on a public relations and marketing campaign for AML Bitcoin. Beginning in August 2017, ABRAMOFF recruited and paid writers to publish and disseminate, under those writers' names, written articles touting AML Bitcoin specifically, as well as to tout the idea of a cryptocurrency that would be fully compliant with "AML" and "KYC" laws and regulations. These articles were published as opinion editorials or "op-eds" on well-known news and financial websites. The recruited writers did not disclose in the published piece that they had been paid

INFORMATION                                         2

by ABRAMOFF or AML Bitcoin to disseminate the information in the article.

6. Beginning in October 2017 and continuing through about February 2018, the NAC Foundation conducted what it called the AML Bitcoin "initial coin offering," or ICO. After the ICO ended in about February 2018, Andrade, NAC Foundation, ABRAMOFF, and other Andrade associates continued to solicit purchasers for AML Bitcoin tokens. NAC Foundation raised more than $5 million through the sale of AML Bitcoin tokens beginning in about July 2017 through about December 2018.

### The Defendant

7. Defendant JACK ABRAMOFF, 61, was a resident of Silver Spring, Maryland. ABRAMOFF was retained to work on public relations and marketing for the NAC Foundation, LLC in order to promote the AML Bitcoin cryptocurrency in advance of and during the AML Bitcoin ICO. Separately, ABRAMOFF performed work as a consultant to various entities and individuals regarding efforts to affect federal legislation, regulations, and policy, and as part of this work for these clients, ABRAMOFF had multiple communications with a sitting member of the United States House of Representatives during which he raised these issues on behalf of the clients.

### Co-conspirator

8. Co-conspirator Rowland Marcus Andrade, also known as Marcus Andrade, was a resident of Missouri City, Texas. Andrade owned and controlled NAC Foundation and was the principal behind the efforts to raise money by selling AML Bitcoin tokens to individual purchasers, many of whom were located in the United States. Prior to soliciting purchasers and raising money for the AML Bitcoin project beginning in about 2017, Andrade created and sold other purported cryptocurrencies called "Black Gold Coin" and "AtenCoin."

### Definitions

9. The term "cryptocurrency" refers to a class of financial instruments that allow the transfer of value between individuals without any third-party mediation or government regulation. This transfer is accomplished with a set of cryptographic protocols executed entirely over the Internet. These protocols require that each transaction's sender and receiver hold an appropriate cryptographic key. Cryptocurrency was invented in approximately 2009, and examples of cryptocurrencies in widespread use include Bitcoin, Ethereum, and Litecoin.

INFORMATION                                    3

10. The term "initial coin offering," or "ICO," refers to the initial sale of a cryptocurrency to the public. An ICO is similar to an "initial public offering" of stock, a transaction that raises money for a private company and begins the public trading of the company's stock. The purpose of an ICO is to raise money by selling either units of cryptocurrency, or by selling "tokens" that act as placeholders that can later be exchanged for the cryptocurrency, and the money raised is typically used to fund the business or entity developing the new cryptocurrency.

<u>The Manner and Means of the Conspiracy and the Scheme to Defraud</u>

11. NAC Foundation, under the direction of co-conspirator Andrade, made statements regarding AML Bitcoin, including press releases that were posted on the AML Bitcoin website and distributed through newswire services, posts on social media including Twitter, discussion forums, and other information posted on the AML Bitcoin website, among others venues. Andrade, NAC Foundation employees and associates, acting at Andrade's direction, ABRAMOFF, and others also made statements directly to purchasers and prospective purchasers of AML Bitcoin tokens.

12. Beginning no later than about July 2017, and continuing to at least about December 2018, Andrade knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by means of omission and concealment of material facts. As part of the scheme to defraud, co-conspirator Andrade, individually and through the NAC Foundation, an entity he controlled, committed or caused to be committed by others, including ABRAMOFF, the following acts, among others:

    a) ABRAMOFF, co-conspirator Andrade, NAC Foundation, and others made public statements and statements to potential purchasers of AML Bitcoin tokens that misrepresented the state of the development of the technology and the viability and timeline for the final release of the functional AML Bitcoin cryptocurrency. Andrade and others repeatedly stated that the conversion of the token to the AML Bitcoin and the launch of the cryptocurrency, with the promised AML and KYC compliant biometric verification, would be completed in six months.

    b) In or about January and February 2018, ABRAMOFF, co-conspirator Andrade, and others engaged in a false "rejection campaign" regarding a purported television commercial

INFORMATION 4

that ABRAMOFF, Andrade, and others stated was to going to be aired during the 2018 Super Bowl television broadcast. The television commercial portrayed AML Bitcoin as impervious to hacking efforts by the North Korean government and its leader in a manner demeaning to the North Korean government and its leader. The statements claimed that the advertisement would have aired during the Super Bowl if the television network airing the Super Bowl and the National Football League had not rejected the advertisement as being too politically controversial. In fact, as ABRAMOFF and Andrade knew, the NAC Foundation did not have the funds to purchase the advertising time, did not intend to air the television commercial, and the advertisement was never rejected by the television network or the NFL. ABRAMOFF retained at least four writers, who disseminated at least five op-ed articles regarding the purported rejection of the advertisement by the NFL and the television network, and these articles were published on five separate online news platforms in February 2018.

      c)     Co-conspirator Andrade, NAC Foundation, and others made statements that falsely stated and implied that the NAC Foundation had reached or was about to finalize agreements with various government agencies for the use of AML Bitcoin or AML Bitcoin technology, in order make prospective purchasers believe that the cryptocurrency was progressing toward widespread adoption. ABRAMOFF retained writers to further disseminate these statements as op-eds published on various news and financial websites. For example, on or about November 8, 2017, NAC Foundation announced that Andrade and NAC Foundation representatives were "in talks with" and "on track to partner with" the government of Panama and the Panama Canal Authority regarding adoption of the AML Bitcoin cryptocurrency for payment of transit fees. This statement overstated the significance and outcome of meetings and conversations with the Panama Canal Authority.

      d)     In or about July 2018, ABRAMOFF made false and misleading statements to an undercover agent posing as a potential large purchaser of AML Bitcoin, including statements that the AML Bitcoin and its technology allowing it to be compliant with all "KYC" and "AML" laws and regulations was functioning and complete.

      e)     ABRAMOFF was compensated by co-conspirator Andrade and NAC Foundation

INFORMATION                           5

for his public relations and marketing work and in some cases for his solicitation of AML Bitcoin Token purchasers, and from about June 2017 through September 2018 received a total of about $220,000 from Andrade and NAC Foundation.

### Overt Acts and Use of Interstate Wires

13. In furtherance of the conspiracy and to effect the objects thereof, in the Northern District of California and elsewhere, co-conspirator Andrade, ABRAMOFF, and others committed the following overt acts:

   a) On or about January 12, 2018, Andrade and others transmitted and caused to be transmitted in interstate and foreign commerce, by means of a wire communication, certain writings, signs, signals, pictures, and sounds, specifically, a wire transfer of in the amount of $730,000 originating from a bank account in the Northern District of California controlled by a person identified as PURCHASER-1 using the Fedwire Funds Service.

   b) On or about July 9, 2018, ABRAMOFF and an undercover agent located in the Northern District of California spoke by telephone, a wire communication in interstate and foreign commerce, and during that conversation ABRAMOFF discussed the undercover agent's stated interest in purchasing AML Bitcoin tokens, and ABRAMOFF made false and misleading statements regarding AML Bitcoin.

### Failure to Register under the Lobbying Disclosure Act

14. From about March 2017 through about December 2017, ABRAMOFF was retained and paid by an entity based in California in the state-legalized medical and personal-use marijuana industry, and that engagement, in part, involved efforts to advocate for changes in federal law and policy regarding marijuana. In connection with his work for that client, ABRAMOFF discussed topics with a member of Congress including the proposed modification or adoption of federal legislation regarding marijuana, adoption of laws that protected medical marijuana from federal law enforcement, and possible amendment to the federal tax code. Despite having communications with that member of Congress on behalf of the client and being paid by the client, ABRAMOFF did not register as a lobbyist with the Secretary of the Senate and the Clerk of the House of Representatives.

15. In or about April 2017, an undercover FBI agent posing as a business person seeking to

INFORMATION                                6

1  fund certain lobbying efforts began communicating with ABRAMOFF, and those communications
2  continued through at least July 2018. In or about June 2017 the undercover agent and ABRAMOFF met
3  in San Francisco, California, and during and after that meeting ABRAMOFF and the undercover agent
4  discussed an engagement that included lobbying activities and planned lobbying contacts. During the
5  meeting and in subsequent conversations, the undercover agent agreed to retain ABRAMOFF for the
6  lobbying effort, and paid him a small retainer fee. After being retained by the undercover agent for an
7  engagement that included planned lobbying activities and at least one lobbying contact with a member
8  of Congress, ABRAMOFF had contacts with that member of Congress and raised topics related to the
9  legislative goals discussed with the undercover agent, including during a meeting that included the
10 member of Congress in or about July 2018.

11     16.     After being retained for these lobbying efforts, and being retained to have one or more
12 lobbying contacts, ABRAMOFF failed to register as a lobbyist with the Secretary of the Senate and the
13 Clerk of the House of Representatives as required by the Lobbying Disclosure Act. ABRAMOFF was
14 aware of the obligations to register as a lobbyist in part because Congress amended provisions of the
15 Lobbying Disclosure Act in 2007 in part as a reaction to ABRAMOFF's past conduct as a lobbyist.

16 COUNT ONE:        (18 U.S.C. § 371 – Conspiracy)

17     Paragraphs 1 through 13 of this Information are re-alleged and incorporated as if fully set forth
18 here.

19     Beginning in or about January 2018, and continuing through in or about September 2018, in the
20 Northern District of California and elsewhere, the defendant,

21                                    JACK ABRAMOFF,

22 did knowingly and willfully conspire and agree with co-conspirator Rowland Marcus Andrade, and
23 others known and unknown to the United States Attorney, to commit offenses against the United States,
24 specifically, to devise a scheme and artifice to defraud and to obtain money and property by means of
25 materially false and fraudulent pretenses, representations, and promises, and by means of concealment
26 of material facts, and in executing said scheme caused writings, signs, signals, and sounds to be
27 transmitted by means of wire in interstate commerce, in violation of Title 18, United States Code,
28 Section 1343.

INFORMATION                                    7

1     All in violation of Title 18, United States Code, Section 371.

2     <u>COUNT TWO</u>:    (2 U.S.C. §§ 1603(a) and 1606(b) – Lobbying Disclosure Act)

3     Paragraphs 1, 7, and 14 through 16 of this Information are re-alleged and incorporated as if fully set forth here.

5     In or about June 2017 and continuing through in or about July 2018, in the Northern District of California and elsewhere, the defendant,

JACK ABRAMOFF,

knowingly and corruptly failed to comply with the provisions of the Lobbying Disclosure Act, 2 U.S.C. § 1602 et. seq., specifically failing to register with the Secretary of the Senate and the Clerk of the House of Representatives no later than 45 days after ABRAMOFF first made a lobbying contact or was employed or retained to make a lobbying contact, as required by 2 U.S.C. § 1603(a).

    All in violation of Title 2, United States Code, Sections 1603(a) and 1606(b).

DATED: June 25, 2020

DAVID L. ANDERSON
United States Attorney

/s/ Lloyd Farnham

LLOYD FARNHAM
ANDREW F. DAWSON
Assistant United States Attorneys

INFORMATION        8